IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAMEION J. RIVERS, | |
| Plaintiff, | |
| v. | Case No. 25-cv-492-NJR |
| BRANDON EDWARDS, CORRECTIONAL OFFICER LEWEY, ANGIE WALTON, and NURSE PRACTITIONER DEARMOND, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Dameion J. Rivers, who at the time he filed his Complaint was an inmate of the South Carolina Department of Corrections and is currently incarcerated at Perry Correctional Institution in Pelzer, South Carolina, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while he was housed in this district at Menard Correctional Center. In the Complaint, Rivers alleges that Defendants Brandon Edwards and Correctional Officer Lewey[1] used excessive force against him. He further alleges that Defendants Angie Walton and Nurse Practitioner Dearmond acted with deliberate indifference to his resulting injuries.[2]

---

[1] Rivers also identifies Correctional Officer Lewey as "John Doe #1" (Doc. 1, p. 3).
[2] Rivers also refers to Nurse Practitioner Dearmond as "Jane Doe #1" (Doc. 1, p. 4).

1

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[3] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

On October 31, 2022, while housed in Menard's Restrictive Housing Unit in North 2, correctional officers approached Rivers about attending the yard (Doc. 1, p. 16). Defendant Brandon Edwards noted that Rivers was on the list as eligible for yard that day and instructed Correctional Officer Evans and a trainee to search Rivers before taking him to the yard (*Id.*). During the strip search, Evans allegedly told Rivers to shake his dick and Rivers complied, although he felt that the use of the term was inappropriate (*Id.*). As Evans walked him to yard, Rivers passed Edwards and complained about Evans's inappropriate language (*Id.*). In response, Edwards told Rivers that because he couldn't stop complaining he should return to his cell (*Id.*). Evans and the trainee began walking Rivers back to his cell. Rivers maintains that he was fully compliant with the officers, although he acknowledges that he told Edwards that he should not curse at him and "it's a certain way that you speak to inmates." (*Id.*).

---

[3] Although Rivers paid his full filing fee, because he was incarcerated at the time of filing his Complaint is still subject to review pursuant to 28 U.S.C. § 1915A.

In response to Rivers's statements, Edwards grabbed Rivers and body slammed him to the floor. Edwards, along with Correctional Officer Lewey, Evans, and the trainee, picked Rivers off the floor and held him in the face down position. Edwards grabbed him by the hair and threatened to beat him up (Doc. 1, p. 16). The correctional officers escorted Rivers upstairs to the healthcare area and placed him in a bullpen (*Id*. at p. 17). After Evans and the trainee left, Lewey and Edwards body slammed Rivers to the ground and began to punch and kick him in the face and body (*Id*.). After the attack, they left the bullpen.

Correctional Officer Atkins then arrived to transport Rivers to another cell, and Rivers informed him of the assault and the need for medical care (Doc. 1, p. 17). Angie Walton came to the room to exam Rivers (*Id*.). Rivers informed her that his left pinky appeared dislocated and noted that he was in terrible pain (*Id*.). He also pointed out that his right eye was swollen and his entire body was sore. Walton informed Rivers that he did not need treatment for his pinky but provided him with an icepack for his face (*Id*. at p. 18). Rivers showed Walton his finger that was clearly out of place, but she ignored his concerns. He was taken back to a cell without medical treatment (*Id*.).

From November 1–6, 2022, Rivers submitted numerous sick call requests to nurses who passed out medications in his unit (Doc. 1, p. 18). Rivers alleges that the sick call slips were addressed to Walton (*Id*.). Some of the sick call requests were also addressed to Nurse Practitioner Dearmond (*Id*.). On November 9, 2022, Rivers saw Nurse Amanda about his injuries, and she noted that his left pinky appeared dislocated. She indicated she would refer him for an x-ray (*Id*. at p. 19). On November 11, 2022, Rivers saw Nurse

3

Melissa who also noted that his pinky looked dislocated but stated that she could not do anything except provide him with Ibuprofen (*Id.*).

Finally, on November 22, 2022, Rivers received x-rays on his left pinky (Doc. 1, p. 19). The following day, he saw Nurse Practitioner Dearmond who informed him that the radiologist determined that his pinky was broken (*Id.*). Dearmond immediately sent him to the emergency room in Carbondale, Illinois, where further x-rays confirmed his fractured pinky. The hospital doctor informed Rivers that they do not do anything for broken fingers, but "buddy wrapped" his pinky. The doctor noted that the nurse practitioner at the prison should refer him to a bone specialist (*Id.* at p. 20). He was also ordered to avoid all activities with the hand.

Upon arriving back at Menard, Dearmond ordered Rivers back to his cell (Doc. 1, p. 20). Rivers believes he should have been housed in the healthcare unit to avoid activities with his left hand (*Id.*). On January 4, 2023, Rivers saw an orthopedic surgeon who informed him that his pinky would remain permanently bent unless he had surgery to place a pin in the finger (*Id.*). The surgeon also recommended an MRI due to possible tendon damage (*Id.*). On February 8, 2023, Rivers had an MRI completed, and on March 30, 2023, he again saw the surgeon who confirmed tendon damage based on the MRI results (*Id.* at pp. 20-21). He ordered surgery to repair the finger.

On July 19, 2023, Rivers had surgery on the pinky to repair the tendon damage and place a pin (Doc. 1, p. 21). Although the stitches were removed two weeks later, the pin remained for another four weeks (*Id.*). On August 30, 2023, the surgeon removed the

pin, but Rivers was instructed to refrain from using his left hand for another six weeks. Rivers remained in the healthcare unit for the entire time.

## Preliminary Dismissals

Rivers identifies a number of officials throughout the Complaint but fails to identify them as defendants. He alleges that Correctional Officer Evans and an unknown trainee held him face down while Edwards pulled on his hair and threatened him (Doc. 1, p. 16). He further alleges that he submitted sick call slips to several nurses, both named and unnamed, but that no one ever responded to the requests (*Id*. at p. 18). Rivers fails to identify these individuals as defendants in the case caption and fails to include them in the section of his Complaint labeled "legal claims" (*Id*. at p. 22). *See* FED. R. CIV. P. 10(a); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). In order to be a party in the case, a plaintiff must identify them in the case caption. *Myles*, 416 F.3d at 551-52. Because these additional individuals are not properly identified as defendants, any potential claim against them is dismissed.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:** Eighth Amendment excessive force claim against Edwards and C/O Lewey for the October 31, 2022 assault on Rivers.
>
> **Count 2:** Eighth Amendment deliberate indifference to medical needs claim against Angie Walton for failing to provide medical attention for the injuries Rivers allegedly suffered in the assault.

5

> **Count 3:** Eighth Amendment deliberate indifference to medical needs claim against Nurse Practitioner Dearmond for failing to immediately set and cast the finger or place Rivers in the healthcare unit until he received further treatment.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[4]

At this stage, Rivers states a viable excessive force claim against Brandon Edwards and Correctional Officer Lewey for the alleged assault on October 31, 2022. *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) ("The core requirement for such a claim is that [the defendant] used force not 'in a good-faith effort to maintain or restore discipline,' but 'maliciously and sadistically to cause harm.'"). Rivers alleges that Edwards and Lewey attacked him without provocation and despite Rivers complying with orders. That is enough to state a claim at this stage.

Rivers also states a viable deliberate indifference claim against Angie Walton. To successfully state an Eighth Amendment deliberate indifference to medical needs claim, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately… indifferent" to that condition. *See Giles v. Godinez*, 914 F. 3d 1040, 1049 (7th Cir. 2019). A plaintiff must demonstrate that the

---

[4] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

defendant's actions were more than negligent, something approaching intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). As to Walton, Rivers alleges that his pinky was obviously dislocated, but Walton failed to order an x-ray or provide him with any medical care. She also failed to provide him with medical care for his other injuries. At this stage, Rivers states a claim against Walton.

But Rivers fails to state a claim against Dearmond. Rivers alleges that when Nurse Practitioner Dearmond first examined Rivers, she failed to set and cast the pinky. He also complains that she failed to place him in the healthcare unit until he could receive further medical treatment (Doc. 1, p. 22). But Rivers acknowledges that after reviewing the x-ray, Dearmond sent him out to the emergency room (*Id.* at p. 19). Dearmond continued to refer him to the surgeon, and Rivers acknowledges that he spent his recovery after surgery in the healthcare unit. Although Dearmond failed to initially set or cast the pinky, Rivers presents only a mere disagreement with her course of treatment which is not enough to allege deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). In fact, he acknowledges that the provider at the emergency room indicated that they did not do anything for broken pinky fingers except buddy wrap them (*Id.* at p. 20). Similarly, his claim that he should have been initially housed in the healthcare unit appears to be a disagreement in the course of treatment. These decisions, at most, amount to negligence, which does not state a claim. Thus, the claim against Dearmond in Count 3 is dismissed.

## Disposition

For the reasons stated above, Count 1 shall proceed against Brandon Edwards and Correctional Officer Lewey. Count 2 shall proceed against Angie Walton. Count 3 against Nurse Practitioner Dearmond and all other potential claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Brandon Edwards, Correctional Officer Lewey, and Angie Walton: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Rivers. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Rivers, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because the claims in this case involve medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Rivers, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Rivers is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: February 9, 2026

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**